# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 12, 2025

Lyle W. Cayce
Clerk

No. 24-10292

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Reginald McDowell,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CR-276-1

_____

Before Jones, Southwick, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Reginald McDowell sold two guns—both of which were involved in a shooting—to an ATF informant. He pleaded guilty to possession of a firearm by a convicted felon. The district court sentenced McDowell to the statutory maximum of 15 years after application of the Sentencing Guidelines'

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-10292

homicide cross-reference. McDowell challenges the application of that cross-reference. We affirm.[1]

I

A

During an undercover investigation, a drug dealer told a confidential informant ("CI") working for the ATF that he knew someone who could sell firearms to the CI. In June 2023, the CI met the drug dealer at a Gold Star Mart gas station in Fort Worth, where the dealer introduced him to McDowell. The CI bought from McDowell a pistol with a large-capacity magazine. The pistol did not have a serial number and was a gold color. McDowell was a convicted felon at the time he made the sale.

In July 2023, only a few weeks later, McDowell and the CI set up another firearm purchase in the parking lot of an Athlete's Foot in Fort Worth. After arriving at the meet, the CI got into the passenger seat of McDowell's orange Dodge Avenger. The CI told McDowell that he was a felon, that he had felonious "homies" who also wanted guns, and that he had a partner who sent guns to Mexico. ROA.213. The CI purchased from McDowell a Canik TP9SA 9mm semiautomatic pistol with a serial number, a holster, and three

---

[1] McDowell also challenges the district court's application of a four-level enhancement to his offense because the firearm was stolen. But as McDowell admits, he "did not suffer any harm from this point of error because the 4 point increase in offense level did not have an effect on Appellant's final guideline calculation." Blue Br. at 19. McDowell is right about that: Because the district court applied the second-degree murder Guideline, it neither found that the firearm was stolen nor applied the specific offense enhancements for felon-in-possession under U.S.S.G. § 2K2.1(b)(4)(A). Thus, the challenge is non-justiciable. *See United States v. Cantu*, No. 22-40512, 2023 WL 4363116, at *1 (5th Cir. July 6, 2023) (per curiam); *United States v. Mathews*, 294 F. App'x 114, 120–21 (5th Cir. 2008) (per curiam).

extended magazines. McDowell informed the CI that he would have additional firearms for purchase in the future, including rifles and "big" guns. *Id.*

In September, ATF agents executed a search warrant at McDowell's residence in Fort Worth, and a week later Fort Worth police officers arrested McDowell on a federal warrant during a traffic stop. A one-count information charged McDowell with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). McDowell pleaded guilty to possession of the Canik pistol without a written plea agreement.

Only after McDowell had been arrested on the gun charge did ATF agents learn that he was also being investigated by the State for murder.

On June 20, 2023, the day before McDowell sold the gold pistol to the ATF's CI, Fort Worth police officers "were dispatched to a call of a male bleeding on the ground, not breathing, with ants and bugs crawling on him." ROA.213. The man, identified as Lawrence Holloway, was lying face down with multiple gunshot wounds. He died at 6:45 AM. Although officers did not find a firearm at the scene, they did find spent shell casings near Holloway's body and an empty holster in his front waistband.

A lot of evidence connected McDowell to Holloway's murder. Some evidence placed McDowell with Holloway near the time he was murdered:

- Holloway's cellphone had pictures of the gold pistol that McDowell sold to the CI the next day.

- Surveillance video showed Holloway as the passenger in McDowell's car on the night of the murder.

- In a July 10 interview, McDowell admitted that he gave Holloway, who he knew as "L Dog," a ride around 1:00 AM that night.

- A witness told Detective Jensen that around 1:00 AM he heard 10–12 gunshots that sounded like they came from guns with two different calibers.

- Around the time of the gunshots, the witness saw a gold or orange Dodge driving with the lights off where Holloway was found dead, and he said the car "was definitely involved in the shooting." ROA.260.

- After being shown security footage of McDowell's car, the witness confirmed that it was the same one he had seen.

Other evidence, including photographs and ballistics, connected the guns that McDowell sold to the CI with the guns involved in Holloway's death:

- Holloway was found dead with an empty holster on his waistband.

- Holloway's family and friends, including Holloway's brother who did not yet know that Holloway had died, told a detective that Holloway "always" had a gold 9mm gun on him. ROA.258, 260.

- Holloway's phone had pictures of a gold pistol in his possession matching this description, which ATF officers identified as the same pistol that McDowell sold to the CI the next day.

- McDowell sold the second firearm (the Canik pistol) to the CI on July 13, three days after his interview with Detectives Jensen and Reyes, suggesting he was dumping evidence.

- A ballistics test confirmed that the gold pistol and the Canik pistol matched shell casings found at the scene of Holloway's murder.

In sum, McDowell admitted to being with Holloway around the time of his murder; witnesses and surveillance camera video indicated that McDowell was the last person to be seen with Holloway immediately before his murder; Holloway had an empty firearm holster on his person; the day after the murder, the defendant sold the victim's gold pistol to ATF, which

was a ballistic match to shell casings found at the murder scene; and the other firearm (the Canik pistol) that the defendant sold to ATF was also a ballistic match to shell casings found at the scene of the murder. Based on this evidence, a Texas judge found probable cause to believe that McDowell murdered Holloway and issued a warrant for McDowell's arrest. State prosecutors then charged McDowell with Holloway's murder.

B

The district court adopted the PSR and addenda, which updated the PSR with the information connecting McDowell's firearms to Holloway's murder.

Initially, in December 2023, the PSR set McDowell's base offense level at 20, reflecting the Guidelines for § 922(g)(1) offenses. *See* U.S.S.G. § 2K2.1(a)(4)(B). The PSR added a two-point enhancement because a firearm was stolen and a four-point enhancement because a firearm was used in Holloway's murder. *See id.* § 2K2.1(b)(4)(A), (6)(B). And it subtracted three points because McDowell accepted responsibility and pleaded guilty. *See id.* § 3E1.1(a), (b). That set McDowell's offense level at 23. McDowell's total criminal history score was 10, so his criminal history category was V. All this yielded a Guideline range of 84–105 months.

Later, in March 2024, the probation office issued an addendum to the PSR. That addendum clarified that not only was the gold pistol connected with Holloway's murder, but so was the Canik pistol—the firearm cited in the offense of conviction. Based on that new information, the addendum applied the cross-reference provision in the felon-in-possession Guideline. If a defendant used or possessed a firearm in connection with another offense and death resulted, that provision directs the court to apply "the most analogous offense guideline" from the homicide Guidelines if the resulting offense level

would be greater than without the cross-reference. *See id.* § 2K2.1(c)(1)(B) (citing *id.* § 2A1).

The PSR addendum accordingly applied the Guideline for second-degree murder. That Guideline provided a base offense level of 38. *Id.* § 2A1.2(a). Accounting for McDowell's acceptance of responsibility and criminal history, the PSR addendum set a total offense level of 35 and found a Guideline range of 262–327 months. Because the second-degree murder Guideline yielded a higher offense level than the felon-in-possession Guideline, the offense-level enhancements under the latter Guideline dropped out from the calculation.

But the bottom of the new range, 262 months, was higher than the statutory maximum for a § 922(g) conviction, which was 180 months. 18 U.S.C. § 924(a)(8). So the statutory maximum of 180 months automatically became the Guideline sentence. *See* U.S.S.G. § 5G1.1(a).

McDowell objected. But the district court overruled McDowell's objections and adopted the findings of the PSR in full. It noted that the application of the second-degree murder Guideline was "appropriate and . . . supported by a preponderance of the evidence, based on the facts as I've reviewed them." ROA.185–86. The court sentenced McDowell to the statutory maximum (180 months), to run concurrently with any future sentence imposed in his related Texas state murder case, and three years of supervised release.

The district court made a special point of saying, three times out loud, that there was "more than enough to justify a 180-month sentence" even if one "took these murder allegations out of the picture." ROA.198. The court based this determination on its consideration of the 18 U.S.C. § 3553(a) factors, which included McDowell's long and varied criminal history. The court made it explicitly clear that it would have imposed the statutory max

irrespective of the Guidelines. *See* ROA.199 ("Therefore, even if it's later shown my guideline calculations here today are [not] correct, I ultimately went with the factors given to me by Congress and determined that a 180-month sentence was appropriate under 18 U.S. Code § 3553."). And the court reconfirmed its position a fourth time in its written statement of reasons.

The district court sentenced McDowell on April 4, 2024, and entered final judgment on April 9, 2024. McDowell timely noticed his appeal.

## II

On appeal, McDowell brings two challenges to his sentence. He argues that there was insufficient evidence to apply the second-degree murder Guideline and that its application violated his Sixth Amendment right to a jury. Both challenges fail harmless-error review.

Under the harmless-error rule, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52. A Sentencing Guidelines error is harmless where the district court explicitly states that it would have given the defendant the same sentence for the same substantive reasons even if it miscalculated the Guidelines. *United States v. Sanchez*, 850 F.3d 767, 769 (5th Cir. 2017); *see also United States v. Njoku*, 737 F.3d 55, 77–78 (5th Cir. 2013) ("Even if we did find error, it would be harmless because the district court explicitly stated that it would give the same sentence even if the enhancement did not apply."). That principle applies to constitutional errors, including Sixth Amendment violations. *United States v. Butler*, 122 F.4th 584, 588 (5th Cir. 2024); *see also Washington v. Recuenco*, 548 U.S. 212, 218 (2006).

Here, the district court said no less than four times that it would have imposed the same sentence, for the same substantive reasons under § 3553, if its Sentencing Guidelines calculation and application turned out to be

No. 24-10292

wrong. *See supra*, Part I.B. A more explicit statement is difficult to imagine. Remanding for resentencing on either challenge would be an empty ritual, because the district court would impose the statutory maximum again.[2]

*     *     *

Accordingly, McDowell's sentence is AFFIRMED.

---

[2] We also note that McDowell's constitutional challenge is squarely foreclosed by judicial precedent. Application of the second-degree murder Guideline did not violate McDowell's Sixth Amendment right to a jury because his sentence was the statutory maximum. *See United States v. Lopez*, 70 F.4th 325, 331–32 (5th Cir. 2023).